UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | Criminal Action No. 5: 15-113-DCR |
| ) | and |
| V. ) | Civil Action No. 5: 19-060-DCR |
| ) | |
| CHRISTOPHER EVERETT ALLEN, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Following a two-day jury trial in May 2016, Defendant/Movant Christopher Allen was convicted of conspiring to distribute fentanyl and heroin, distributing heroin and fentanyl resulting in an overdose death, and possessing heroin and fentanyl with the intent to distribute it. Allen was sentenced to a total term of 365 months' imprisonment. His conviction and sentence were affirmed on appeal. [Record Nos. 40, 49] Allen later filed a motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. [Record No. 51] After this Court denied Allen's motion for a new trial, the United States Court of Appeals for the Sixth Circuit affirmed that decision. [Record Nos. 61, 64]

Allen has now filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He alleges that his trial attorney, Jeffrey Darling, provided ineffective assistance.[1] [Record Nos. 67, 72] Consistent with local practice, Allen's § 2255 motion was referred to a United States Magistrate Judge for review and issuance of a report pursuant to 28

---

[1] Allen was permitted to add an additional claim to his § 2255 motion, which has been fully briefed and considered by the Court. [*See* Record Nos. 72, 73.]

U.S.C. § 636(b)(1)(B). United States Magistrate Judge Candace J. Smith reviewed the motion and thereafter issued a Report and Recommendation ("R & R"), recommending that Allen's motion to vacate be denied. [Record No. 79]

Allen has filed objections to the R & R. [Record No. 82] While his filing does not directly respond to the determinations made in the R & R, he presents new arguments that he failed to raise or fully develop earlier. [Record No. 82] Although this Court must make a *de novo* determination of those portions of the Magistrate Judge's recommendations to which timely objections are made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). And notwithstanding Allen's failure to file appropriate objections to the Magistrate Judge's determinations, the Court has reviewed the R & R *de novo*, as well as Allen's "objections," and agrees that the § 2255 should be denied.

**I.**

This case involves the tragic death of Nicole Alvarez, who died of a drug overdose on September 16, 2015, in Lexington, Kentucky. Alvarez's fiancé, Raymond Lamb, discovered her unconscious early that morning in the couples' apartment, with a spoon and syringe nearby. Lamb called 9-1-1, and Alvarez was taken to a local hospital, where she was pronounced dead. Toxicology reports indicated that Alvarez died from acute combined drug poisoning, which included fentanyl, heroin, and gabapentin.

While at the hospital awaiting word on Alvarez's condition, Lamb received a text message on the phone he shared with her. Lamb testified that he did not know the identity of the person sending the text but, based on the content of the message, he suspected that it was

from Alvarez's drug supplier. Lamb replied to the message, pretending to be Alvarez. Upon returning home later that day, Lamb contacted the Lexington Police Department. Officers advised Lamb to continue the text conversation and to request a quantity of drugs substantial enough to warrant the suspected dealer's arrest. Posing as Alvarez, Lamb arranged to purchase one gram of heroin from the individual with whom he was exchanging text messages.

Officers were waiting when Defendant Allen showed up outside Alvarez and Lamb's apartment the following day with three bags containing heroin and/or fentanyl, a set of digital scales, and $2,721.00 in cash. Allen was arrested and officers confirmed that Allen's telephone number matched the number that Lamb had been texting.

## II.

To prevail on a motion under 28 U.S.C. § 2255, the movant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the jury's verdict. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). In this case, Allen claims that Attorney Darling's representation of him was constitutionally ineffective. These claims are governed by the familiar standard announced in *Strickland v. Washington*, 466 U.S. 668, 694 (1984), under which Allen must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's performance.

To demonstrate deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Counsel's performance is measured under "prevailing professional norms" and is evaluated "considering all the circumstances." *Id.* A defendant is not permitted to second-guess counsel's strategic decisions, and there is a strong presumption

that counsel's conduct falls within the wide range of acceptable professional assistance. *Id.* at 689.

To establish prejudice, the movant must show there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Id.* "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Allen has the burden of proving his allegations by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

## III.

### A.   Counsel's Failure to File a Motion to Suppress

Allen argues that attorney Darling was ineffective because he "refused to file a suppression motion." He contends that, "[b]ecause of the conflicting toxicology reports" from government witnesses Michael Ward and Susan Robinson, "which showed that there was no fentanyl in the syringe, only morphine . . . any reference to the petitioner being associated with heroin laced with fentanyl was circumstantial at best." Allen also appears to argue that counsel should have moved to suppress the text messages exchanged between Allen and Lamb.

Suppression, or exclusion of evidence, is used to deter law enforcement officers from conducting searches or seizures in violation of the Fourth Amendment to the United States Constitution. *United States v. Moorehead*, 912 F.3d 963, 967 (6th Cir. 2019). Allen does not purport to have had any privacy interest in Alvarez and Lamb's phone or the evidence seized from their apartment, so seeking suppression of this evidence in the Fourth Amendment context would have been unavailing. *See e.g., United States v. Elmore*, 304 F.3d 557, 560-61 (6th Cir. 2002).

Allen and Darling signed a waiver allowing police to search Allen's cell phone on February 26, 2016, approximately two months following his indictment. [Record No. 74-2] Allen contends, for the first time in his objections to the R & R, that Darling coerced him into signing the waiver. However, he has not provided any factual details supporting this allegation. Additionally, there is no reason to believe that law enforcement would not have been able to obtain a search warrant for Allen's phone had he not signed the waiver. Regardless, claims raised for the first time in objections to a Magistrate Judge's report and recommendation are deemed waived. *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

Allen's speculation that the government seized and presented evidence from his cell phone to the grand jury that indicted him is unwarranted. As the magistrate judge pointed out, there was other significant evidence of Allen's guilt including the text messages on Alvarez's phone and the drugs seized from Allen at the time of his arrest outside her home.

Finally, contrary to Allen's suggestion, circumstantial evidence is a valid type of proof and, when "substantial and competent," it can support a verdict on its own. *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004). Counsel's failure to pursue frivolous motions and objections does not constitute ineffective assistance of counsel. *United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1993). Accordingly, this argument is without merit.

### B. Counsel's Alleged Failure to Communicate with Allen Prior to Trial

Allen contends that counsel refused to accept his phone calls prior to trial, resulting in a breakdown in the attorney-client relationship. Specifically, he argues that he had prepared questions he wanted Darling to ask during the trial, but he did not ask the questions because "he and counsel were not on the same page." Darling submitted an affidavit in response to

Allen's § 2255 motion in which he reports that he "met with Allen as often as necessary to be prepared for trial," and "he was well prepared to represent Allen at trial." [Record No. 74-1, p. 2]

Although Allen asserts that he prepared questions for Darling to ask during trial, he has not advised the Court of the content of those questions. Without knowing the content of the questions, the Court cannot conclude that Darling's representation of Allen fell below an objective standard of reasonableness in failing to ask them. For example, counsel cannot be faulted for failing to ask questions that would not be permitted under the rules of evidence. Additionally, there is no way to determine that Allen was prejudiced by Darling's failure to ask unidentified questions. In short, this claim fails because Allen has not satisfied either prong of *Strickland*.

C. **Counsel's Cross-Examination of Witnesses**

Allen also asserts that Darling's cross-examination of several witnesses was deficient. But after reviewing the trial transcript, the Court concludes that this claim also lacks merit. The Court will examine examination of the subject witnesses in turn.

1. **Susan Robinson**

The United States presented the testimony of Susan Robinson, a chemist with the Kentucky State Police Central Forensic Laboratory. [Record No. 47, pp. 23-32] Robinson tested the substances found in the three bags seized from Allen on the day of his arrest. Item one contained heroin and fentanyl and weighed .25 grams. *Id.* at pp. 26, 32. Items two and three contained heroin and weighed 10.973 and .963 grams, respectively. *Id.* at pp. 26, 33. Robinson also tested the syringe and spoon found at the scene of Alvarez's overdose. She testified that the plunger of the syringe contained morphine, while the surface of the spoon

contained heroin and fentanyl. Robinson explained that heroin, left in a syringe or sitting out over a period of time, starts to break down into the metabolite "6-monoacteyl", and then into morphine. *Id.* at p. 28.

Attorney Darling cross-examined Robinson. *Id.* at pp. 32-37. In response to Darling's questioning, Robinson testified that the fentanyl residue on the spoon could have been there from a prior use and she did not know if the fentanyl was actually mixed with heroin at the time of use. In other words, Alvarez could have used heroin "and then turned around and abused fentanyl by itself." *Id.* at p. 36. Further, through Robinson's testimony, Darling highlighted the uncertain timeline of Alvarez's drug use by emphasizing that the syringe tested positive for morphine only, which "could have been a metabolite two or three down from heroin." *Id.* at pp. 36-37.

Darling's cross-examination of Robinson supported Allen's theory that, while he may have sold Alvarez heroin, he did not sell her fentanyl. This was part of a reasonable trial strategy, and Allen has not identified additional questions that Darling should have asked Robinson.

2. **Michael Ward**

The government also presented the testimony of toxicologist Michael Ward, who had served in the Kentucky Medical Examiner's Office for 33 years. *Id.* at pp. 40-57. Ward testified that samples of Alvarez's blood and urine were sent to AIT Laboratory, and he reviewed the results of those studies. Alvarez's blood contained fentanyl at nine nanograms per milliliter and morphine at 128 nanograms per milliliter. Her blood also contained 6-Monoacetylmorphine (a heroin metabolite) at 6.9 nanograms per milliliter, gabapentin at 12.6 nanograms per milliliter, and a marijuana metabolite at 5.3 nanograms per milliliter. Alvarez's

urine contained buprenorphine and its metabolite, morphine and its metabolites, and a marijuana metabolite. *Id.* at p. 43.

Ward explained that a therapeutic range of fentanyl is one to three nanograms per milliliter. *Id.* at p. 45. He opined that the level of fentanyl in Alvarez's blood was lethal. *Id.* at p. 46. According to Ward, the morphine also was "enough to be a lethal level," but may not necessarily have killed an addict who had developed a tolerance. *Id.* at p. 63. Ward further testified that the level of gabapentin in Alvarez's blood was a therapeutic level. *Id.* 49. There was no evidence of fentanyl in Alvarez's urine. According to Ward, this meant that Alvarez used the fentanyl and died shortly thereafter, before the fentanyl began to appear in her urine. *Id.* at p. 55.

Darling cross-examined Ward. *Id.* at p. 57. He questioned Ward regarding the various substances (morphine, 6-monoacetylmorphine, codeine, and hydromorphone) found in Alvarez's urine. *Id.* at p. 59. While these were possible metabolites of heroin, morphine, codeine, and hydromorphone could be abused on their own, as well. The fact that these substances were in Alvarez's urine simply showed that heroin or one of the other drugs had been ingested within the days leading up to her death. *Id.* at p. 61.

Attorney Darling explained in his affidavit that he interviewed Ward prior to trial and found that his testimony was consistent with the defense strategy that Allen had sold Alvarez heroin in the days prior to her death but did not sell fentanyl to her at any time. But Allen complains that Darling "let [Ward] off the hook," and states that Darling should have asked whether "it is possible to die of fentanyl when there's no trace of it in the needle" and whether "fentanyl metabolize[s] into heroin and vice versa. But Darling was not ineffective for failing

to ask these questions, as there is simply no suggestion that Ward's responses to them would have been favorable to Allen's defense.

### 3. Raymond Lamb

Allen also claims to have been unsatisfied with Darling's cross-examination of Alvarez's fiancé Raymond Lamb. Allen contends that Darling "did not adequately press [Lamb] on the conflicting statements he initially gave to local police, the federal authorities, and on the stand during trial." But Allen does not elaborate on the alleged "conflicting statements." Darling cross-examined Lamb extensively on a variety of topics, including his claim that he was unaware Alvarez was using drugs prior to her overdose. [Record No. 46, pp. 45-68] He also questioned Lamb about text messages he exchanged with Allen while posing as Alvarez, getting Lamb to concede that he had also called the number and left a voice message "to let [Allen] know not to be selling to [his] girlfriend or [his] fiancée anything at all." *Id.* at p. 44, 55.

Darling questioned Lamb thoroughly. Again, it is unclear what inconsistencies or conflicting statements Allen believes should have been the subject of further examination. He has not identified them specifically and they are not apparent to the Court upon review of the record, including the trial transcript. Accordingly, this claim fails.

### 4. Detective Christopher Pope[2]

Detective Christopher Pope, a Lexington Police Officer with the Narcotics Enforcement Unit, testified that he met with Raymond Lamb on September 17, 2015. [Record No. 46, p. 116] Lamb had contacted police the day before, stating that he wanted to provide

---

[2] While Allen has identified this individual as "Detective Polk," it appears that he is referring to Detective Christopher Pope.

information regarding the person he believed had sold heroin to Alvarez. According to Pope, Lamb provided a telephone number for the individual, who Lamb knew as "Chris," and advised officers that Chris was not aware of Alvarez's passing. *Id.* at pp. 116-117.

Pope testified that he and Sergeant Dawson advised Lamb to continue communicating with Chris and to attempt to set up a purchase of one gram of heroin. *Id.* at p. 118. According to Pope, multiple undercover officers were in the area when Lamb advised them that "Chris [was] outside in a white truck." *Id.* at p. 120. Pope stated that the white truck was the only vehicle on the street. As the truck began to stop in front of Alvarez and Lamb's apartment, an officer pulled up and initiated the traffic stop that led to Allen's arrest.

Allen contends that "counsel did not challenge the lies told on the stand" during Pope's testimony. [Record No. 67-1, p. 14] Specifically, Allen asserts that police did not stop him in front of Alvarez's apartment but, instead, as he had started to drive away and was stopped down the street. In response, Darling indicates that the alleged inconsistencies were "fairly minor and of little consequence to the case." *Id.* Further, there was no basis to cross-examine Pope based on Allen's unsupported belief that Pope was lying. [Record No. 74-1, p. 7]

Although Pope suggested that Lamb was aware of Allen's identity prior to Allen's arrest, Lamb contradicted this during his own testimony. [*See* Record No. 46, p. 61.] Further, Allen does not explain how counsel should have handled the situation differently. Allen does not contend that he was willing to testify to the fact that he and Lamb were acquainted prior to Alvarez's overdose. Regardless, Allen has not explained how he was prejudiced by this or other alleged inconsistencies in Pope's testimony.

### D. Counsel's Failure to Request an Evidentiary Hearing

Allen asserts that he asked Darling repeatedly to request an evidentiary hearing to challenging "the conflicting lab reports," but counsel refused. [Record No. 67-1, p. 11] Allen has identified no basis for challenging the reliability of Michael Ward's opinions, and offers no grounds upon which the Court might have conducted an unspecified type of evidentiary hearing. Instead, trial *was* the "evidentiary hearing" during which the parties were permitted to introduce evidence for the jury's consideration.

Allen has not explained how the chemist's report conflicted with the toxicologist's, nor has he identified any other source of conflict between these witnesses. To the extent he argues, "it's physically impossible to die of fentanyl if there was no residue found in the injecting needle," this constitutes an opinion to which a properly qualified witness would have been required to testify. Allen's self-described status as "a drug user" would not have qualified him to provide this opinion to the jury. Additionally, there is no indication that he was willing to testify in the case. And it is unclear how such testimony would have benefited Allen in light of Ward's uncontroverted testimony that the fentanyl level in Alvarez's blood was lethal at three times the high end of the therapeutic range.

### E. Counsel's Concession That Defendant Was a "Drug Dealer"

Allen argues that Darling "usurped" his rights by admitting to the jury that he (Allen) was a drug dealer. While Allen does not point to any specific statements made during trial, he may be referring to the following comments Darling made during opening statements:

> And the reason is when you look at these text messages and when you see everything, you will believe that Mr. Allen sells heroin. I'm not going to sit here and tell you that he is an angel, that he doesn't do that because he does. But based on the text messages that you see and the testimony that you will hear . . . you will believe that yes, the government has proved that Christopher Allen

sells drugs. . . . But you will not hear any proof in this case, certainly not proof beyond a reasonable doubt, that Christopher Allen sold the drugs to Nicole Alvarez that caused her death. That's the issue.

[Record No. 46, p. 27]

The evidence of the defendant's drug trafficking activities was overwhelming. The defendant was arrested when he arrived to participate in a controlled drug transaction. He was carrying two smaller packs of heroin and one larger pack, weighing approximately 12 grams. He also possessed a set of digital scales and over $2,700.00 in cash. As Detective Pope testified, all of these factors were indicative of drug trafficking.

Next, officers seized a cellular telephone from Allen at the time of his arrest. Detective Timothy Graul performed a Cellebrite analysis of the telephone and discovered text messages from Alvarez and numerous other individuals who contacted Allen seeking to purchase narcotics. [Record No. 46, p. 146] Allen and the buyers discussed prices and potential meeting places to carry out the drug transactions. He sometimes told them he would have additional product when he returned from Cincinnati, a location known to Graul to be a supply hub for local drug traffickers. *Id.* at p. 158.

When a defendant chooses to accept the representation of counsel, counsel is granted a degree of authority when it comes to decisions of trial strategy. *See Faretta v. California*, 422 U.S. 806, 820 (1975); *United States v. Bonner*, 852 F.2d 569 (6th Cir. 1988). Darling reports that the strategy in this case was to show that, although Allen sold Alvarez heroin, he did not sell her fentanyl. The evidence that he sold heroin to Alvarez and others was overwhelming, and counsel made a reasonable decision to acknowledge the evidence that Allen sold drugs.

Allen has not identified an alternative strategy that Darling could have or should have pursued, nor has he established that he was prejudiced by Darling's comments to the jury. As

previously stated, the evidence of Allen's drug trafficking was substantial, so it extremely likely that the jury would have concluded that he was a "drug dealer" without Darling's statements. Darling's efforts to put this information in context and perhaps mitigate its effect, falls within the realm of sound trial strategy.

### F. Objections Regarding Allen's Presentence Report

Allen contends that his presentence investigation report ("PSR") included "two misdemeanors where he was given two points toward his criminal history," and "those should have been one point each." [Record No. 67-1, p. 10] He reports that he voiced his concerns to Darling prior to sentencing, but Darling advised him that the offenses did not matter and that no one looked "at that stuff anyway." *Id.*

The PSR reflects three criminal history points for Allen's July 28, 2007 felony convictions for second-degree manslaughter and first-degree wanton endangerment. He received a total of two points for two November 2007 convictions in Fayette Circuit Court—possession of a controlled substance and use/possession of drug paraphernalia. This resulted in a total of five criminal history points and a criminal history category of III.

Based on the foregoing, the source of Allen's dissatisfaction is unclear. He does not contest the three-point assessment resulting from his felony convictions. He concedes that he should have been assessed two more points for his misdemeanors, which would result in a total of five. Accordingly, he has not shown that he was prejudiced by counsel's alleged failure to raise the unspecified arguments regarding the PSR.

### G. Insufficiency of Evidence on Conspiracy Charge

Allen was charged in count 1 of the indictment with conspiring with others to distribute fentanyl and heroin. Darling moved for judgment of acquittal on count 1, arguing that there

was insufficient evidence of a conspiracy. [Record No. 47, p. 69] Specifically, he argued that there was insufficient evidence of Allen being involved with other people to supply drugs to Alvarez. Further, Darling argued, even if one believed that Allen provided drugs to Alvarez, there was no indication that anyone else was involved that would give rise to a conspiracy. *Id.* Relying heavily upon the text messages from Allen's phone that were introduced into evidence, the Court denied the motion for judgment of acquittal.

In his closing statement, Darling focused again on the dearth of evidence regarding the conspiracy charge. He advised the jury that there was not another person charged in the conspiracy and the government had not even identified another person by name who was involved in the conspiracy. According to Darling, the evidence was insufficient to meet the government's burden. *Id.* at p. 113.

The government explained in its closing, consistent with the jury instructions, that it need not prove the identity of Allen's co-conspirators. The government again focused heavily on the text messages sent from and to Allen's phone, paying particular attention to the references to his supplier in Cincinnati. Contrary to Allen's argument, Darling challenged this sufficiency of the evidence to prove the conspiracy charge, but the jury ultimately decided that the government had sustained its burden.

### H. Counsel's Failure to Object to Verdict Form

For the first time in his objections to the R&R, Allen contends that Darling should have objected to the verdict form that was used for count 2, distribution of heroin and fentanyl resulting in overdose death. This Court instructed the jury according to Sixth Circuit Pattern Criminal Jury Instruction 14.02B, drug distribution resulting in overdose death, which is based in part on *United States v. Burrage*, 571 U.S. 204 (2014). Specifically, the jury was instructed

that, to convict Allen of the charge, it must find that the government proved each of the following elements beyond a reasonable doubt:

> 1) that Allen knowingly or intentionally distributed a mixture or substance containing a detectable amount of fentanyl and heroin; 2) that he knew at the time of distribution that the substance was a controlled substance; and 3) that a death resulted from the use of the mixture or substance containing a detectable amount of fentanyl and heroin.

Allen contends that Darling should have objected to the Court's use or a "yes or no" verdict form. Contrary to Allen's suggestion, this is not the same as a general verdict form that did not specify which controlled substance members of a conspiracy were convicted of distributing. *See United States v. Ballard*, 400 F.3d 404 (6th Cir. 2008). In the instant case, the substantive jury instruction provided all of the elements the jury was required to find for the count, and a general verdict form was appropriate.

Allen continues to argue that the evidence was insufficient to prove that he sold Alvarez drugs she used which resulted in her death. However, the Sixth Circuit already determined that the evidence was sufficient to prove this conviction. *United States v. Allen*, 716 F. App'x 447, 450-51 (6th Cir. 2017). Allen may not use his § 2255 motion to relitigate this issue, which was already decided on appeal. *See United States v. Birdsong*, No. 5: 16-CR-0016-DCR-MAS, 2019 WL 5106775, at *1 (E.D. Ky. Sept. 4, 2019) (collecting cases).

### I. An Evidentiary Hearing is Not Warranted

An evidentiary hearing is required in evaluating a motion to vacate a sentence unless the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b). And while the movant's burden for obtaining an evidentiary hearing is relatively light, a hearing is not necessary when there is no factual dispute at issue. *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). As explained above, resolution of Allen's motion is based on

the record and does not depend on resolution of any material factual dispute. Taking Allen's allegations that are not refuted by the record as true, he has not established that his attorney was ineffective as defined under *Strickland v. Washington*. Mere assertions of innocence or conclusions of fact, as the defendant has made here, do not require the Court to conduct a hearing. *See id.* Accordingly, Allen's request for a hearing will be denied.

**IV.**

The Court must issue or deny a certificate of appealability when it enters a final order that is adverse to the movant in a § 2255 proceeding. Rule 11 of the Rules Governing § 2255 Proceedings for the United States District Courts; 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may be issued only when the defendant has "made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy this burden, the defendant must show that reasonable jurists could debate whether the petition should have been resolved in a different way or that the issues involved were adequate to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Allen has presented a host of ineffective-assistance-of-counsel claims, but none of them deserve encouragement to proceed further. Darling's actions are not judged through "the distorting effects of hindsight." Instead, they must be assessed based on counsel's perspective at the time. *Strickland*, 466 U.S. at 689. Allen has not presented any argument raising a colorable claim that counsel's conduct fell below a reasonable standard of conduct. And Allen's dissatisfaction with the result of the proceedings is not a justification for altering the applicable standards and providing relief. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant/Movant Allen's motion to correct, vacate, or set aside sentence pursuant to 28 U.S.C. § 2255 [Record No. 67] is **DENIED.**

2. The Magistrate Judge's Report and Recommendation [Record No. 79] is **ADOPTED** and **INCORPORATED**, in full.

3. Defendant/Movant Allen's objections to the Report and Recommendation [Record No. 82] are **OVERRULED**.

Dated: April 2, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky